**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**B. ROE,\* Defendant–Appellant.**

**No. 91–30085.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 1992.

Opinion Filed Sept. 18, 1992.

Opinion Withdrawn Oct. 6, 1992.

Decided Oct. 6, 1992.

---

\* The case was originally filed under the full name of the plaintiff, but because the disposition called for publication, the court has decided on its own motion to change that name to the fictitious name of "B. Roe."

Steven Jacobson, Deputy Federal Public Defender, Portland, Or., for defendant-appellant.

Robert Thomson, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before: TANG, FERGUSON and THOMPSON, Circuit Judges.

## ORDER

The opinion filed September 18, 1992 is withdrawn.

DAVID R. THOMPSON, Circuit Judge:

B. Roe pleaded guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a), and was sentenced under the United States Sentencing Guidelines to 145 months in prison. She appeals her sentence, arguing that the district court erred in refusing to depart downward from her applicable guideline range based on her history of childhood abuse. She also contends the court erred in failing to state its reasons for choosing her sentence within the guideline range. We have jurisdiction under 18 U.S.C. § 3742(a)(2) and 28 U.S.C. § 1291.

## DISCUSSION

### A. Refusal to Depart

The district court concluded that because the Sentencing Commission considered the effects of childhood abuse in formulating the guidelines, it could depart on that basis only in extraordinary circumstances. *See United States v. Boshell,* 952 F.2d 1101, 1107 (9th Cir.1991) (if a factor was considered in formulating the guidelines, it may support a departure only in "extraordinary circumstances"). It then determined that although Roe's history of abuse was shocking, it was not so extraordinary as to warrant a downward departure. We review de novo a district court's determination that the Sentencing Commission considered a particular circumstance in formulating the guidelines. *United States v. Lira–Barraza,* 941 F.2d 745, 746 (9th Cir.1991) (en banc). We review for clear error the court's finding that a particular circumstance was not extraordinary. *United States v. Morales,* 961 F.2d 1428, 1431 (9th Cir.1992).

■ The guidelines do not specifically address the issue of childhood abuse. However, they do provide that "[m]ental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the guidelines." U.S.S.G. § 5H1.3 (1990). Other circuits have held that section 5H1.3 encompasses the psychological effects of abuse. *See United States v. Desormeaux,* 952 F.2d 182, 185 (8th Cir.1991) (effects of spousal abuse are emotional conditions under section 5H1.3); *United States v. Vela,* 927 F.2d 197, 199 (5th Cir.) (effects of childhood abuse are emotional conditions under section 5H1.3), *cert. denied,* — U.S. —, 112 S.Ct. 214, 116 L.Ed.2d 172 (1991).

In *Vela,* the defendant contended she was entitled to a downward departure based on her history of incest and abuse. The district court declined to depart on that ground, holding that it could do so under section 5H1.3 only in extraordinary circumstances. The Fifth Circuit affirmed, stating that:

A defendant's family history of incest or related treatment which causes defendant to incur a mental or emotional condition that affects criminal conduct, may be a ground for departure in extraordinary circumstances. It is clear that the Sentencing Commission, while leaving open the possibility that the circumstances of a defendant's mental or emotional condition may be so extraordinary that departure from the guidelines is

proper, did not consider these factors relevant in formulating the guidelines. *Id.* at 199.

We agree with the Fifth Circuit's position in *Vela*. The psychological effects of child abuse manifest themselves in a variety of ways. For example, victims of such abuse frequently experience profound feelings of inadequacy, isolation, confusion, low self-esteem, and guilt. *See* Chandler, Knowns and Unknowns in Sexual Abuse of Children, in *Social Work and Child Sexual Abuse,* 51, 61–63 (J. Conte & D. Shore eds. 1982). Each of these effects constitutes either a mental or emotional condition. Because the Sentencing Commission expressly considered the impact of such conditions in formulating section 5H1.3, we hold that the psychological effects of childhood abuse may only be considered as a basis for departure in extraordinary circumstances. *See Boshell,* 952 F.2d at 1107.

■ Although the district court correctly concluded that the Sentencing Commission considered the psychological effects of childhood abuse in formulating the guidelines, it clearly erred in finding that the circumstances of Roe's abusive childhood were not extraordinary. For much of her youth, Roe lived with her drug-addicted mother and her mother's boyfriend, who was a narcotics dealer. The record indicates the mother's boyfriend savagely beat Roe, sometimes as often as once a day, with belts, extension cords, and coat hangers. He also routinely raped and sodomized her. When Roe resisted, she was stripped naked and beaten into submission. On at least one occasion, he forced Roe to lay naked on the basement steps while he urinated in her mouth. This abuse continued for several years until, at the age of twelve, Roe ran away from home.

Roe continued to be abused even after she escaped from her mother's home. Indeed, shortly after she left home, she was taken to Las Vegas by an acquaintance and forced to work as a prostitute. While there, she was brutally beaten by a series of pimps, customers, and boyfriends; she has been the victim of similar episodes of abuse for the past fifteen years.

Several medical experts examined Roe prior to sentencing. Each agreed that her history of abuse was exceptional. One psychologist testified that "it seems to be extreme" and "go[es] above and beyond" the type of abuse normally encountered. Another stated that "[h]er history is on the more severe side. I would say she would fit in the upper spectrum of people I have seen in jail. She is not average." A third reported that Roe's abuse was so severe she had become "virtually a mindless puppet."

Based on these facts, we conclude the district court clearly erred in holding that the tragic circumstances of Roe's abusive upbringing were not extraordinary. We therefore remand to the district court to exercise its discretion in determining whether the exceptional nature of Roe's history of abuse warrants a departure from her applicable guideline range.[1]

On remand, the district court may also wish to consider whether Roe's history of abuse and neglect warrants a departure under our recent decision in *United States v. Floyd,* 945 F.2d 1096 (9th Cir.1991) (affirming a departure based on a defendant's "youthful lack of guidance"). Roe lacked any semblance of a stable family environment, and it is doubtful she received any meaningful guidance from her drug-addicted mother or her mother's abusive boyfriend. As discussed above, Roe was physically and sexually abused throughout her childhood. She was also neglected by her mother and, on several occasions, forced to transport drugs from Oregon to California for her mother's use. This combination of circumstances may justify a departure under *Floyd.*

---

1. This decision is not in conflict with our prior decision in *United States v. Morales,* 961 F.2d 1428, 1430 (9th Cir.1992), because we are not reviewing the district court's discretionary decision not to depart downward from the Guidelines. Instead, we are reviewing a factual finding that the district court believed prevented it from exercising its discretion.

## B.  Reasons for Choosing Roe's Sentence

 The district court is required by 18 U.S.C. § 3553(c)(1) to state its reasons for choosing a sentence within the applicable guideline range if that range exceeds 24 months. *United States v. Upshaw*, 918 F.2d 789, 792 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1335, 113 L.Ed.2d 266 (1991). Roe contends her sentence should be vacated because the district court failed to state its reasons for choosing 145 months as an appropriate sentence.

 The applicable guideline range for a defendant with a criminal history category VI and an offense level of 30 is 168 to 210 months. Roe was not sentenced within this range. Instead, she received a two-level downward departure based on coercion and duress, U.S.S.G. § 5K2.12, and was sentenced to 145 months in prison. Because Roe's sentence fell *outside* her applicable guideline range of 168 to 210 months, section 3553(c)(1) does not apply. *Cf. United States v. Martinez–Gonzalez*, 962 F.2d 874, 878 (9th Cir.1992) ("a sentence involving an upward departure is not imposed within the applicable Guidelines range").

 Because the district court departed from Roe's applicable guideline range, it was required to state "the specific reasons for the imposition of a sentence different from that described." 18 U.S.C. § 3553(c)(2). At Roe's sentencing hearing, the court clearly stated its reasons for granting a downward departure for coercion and duress.

> Under 5K2.12, the defendant moves under that guideline urging coercion. I accept the truth of the defendant's version that she was threatened by a male companion and struck before she committed the robbery.... However, the guideline makes extremely clear the reasonableness of the conduct of the defendant is to be taken into consideration in determining the extent of the departure.

The court then found that although Roe had been coerced, her conduct was not entirely reasonable and therefore only entitled her to a two-level departure. This explanation satisfied the requirements of section 3553(c)(2).

## CONCLUSION

We VACATE Roe's sentence and REMAND to the district court to exercise its discretion in determining whether Roe is entitled to a downward departure based on her extraordinary history of childhood abuse and neglect. We reject Roe's contention that the district court improperly failed to state its reasons for choosing her sentence under 18 U.S.C. § 3553(c).