# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3701

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Southern District of Iowa. |
| | * | |
| Marquette Scott Walterman, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 13, 2003

Filed: September 16, 2003 (corrected 9/25/03)

_____

Before BOWMAN, HEANEY, and BYE, Circuit Judges.

_____

HEANEY, Circuit Judge.

Marquette Scott Walterman pleaded guilty to one count of conspiracy to manufacture and distribute methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. At sentencing, the district court found that Walterman qualified as a career offender under United States Sentencing Guideline § 4B1.1 because he had previously been convicted of two felony controlled substance offenses. Walterman moved for a downward departure under United States Sentencing Guideline § 4A1.3, arguing that his criminal history category significantly over-represented the seriousness of his criminal history or the likelihood that he would commit future crimes. The district court denied the motion, and sentenced

Walterman to 262 months, the low end of his guideline range of 262-327 months. Walterman now appeals the district court's application of the career offender enhancement and denial of his motion for a downward departure. We reverse in part and remand for resentencing absent the career offender enhancement.

Generally, a district court's determination of whether a defendant's prior convictions qualify him as a career offender is factual, and thus we review for clear error. United States v. Stevens, 149 F.3d 747, 749 (8th Cir. 1998). A defendant is subject to a sentence enhancement as a career offender if, inter alia, he has at least two prior felony convictions for controlled substance offenses. USSG § 4B1.1(a). According to the Guidelines,

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

USSG § 4B1.2(b).

Prior to the instant offense, Walterman had twice been convicted in Iowa state court of possession of precursor chemicals with intent to manufacture a controlled substance, in violation of Iowa Code § 124.401.4. At least one of these convictions was based on facts indicating Walterman possessed lithium with the intent to manufacture methamphetamine.[1]

---

[1]Walterman's presentence report states that both of his predicate drug offenses were for possession of lithium with intent to manufacture methamphetamine. But, in his brief and during oral argument before this court, Walterman stated that the latter of these two convictions was actually based on possession of a product containing ephedrine with intent to manufacture. We see no need to resolve this inconsistency, for Walterman only appeals the finding of the district court that the first of these two

A felony conviction for possession of a precursor chemical with intent to manufacture a controlled substance does not fall under either category of controlled substance offenses defined in Guideline § 4B1.2(b). First, it is not a conviction for the "manufacture, import, export, distribution, or dispensing of a controlled substance offense." USSG § 4B1.2(b). This section is concerned strictly with controlled substances, and lithium is not one. Even if lithium was a controlled substance, this section would not apply because each of the referenced acts requires something more than just possession, be that making, buying, selling, or giving away drugs.[2]

While the remainder of the guideline purports to deal with the same conduct that Walterman had previously been convicted of–possession with intent to manufacture–it is equally inapplicable. This is so because, by its own language, the guideline is concerned only with possession of controlled substances, a class of chemicals to which lithium does not belong.

That does not end the matter, however. The related guideline application note advises that in some instances possessing precursor chemicals with the intent to manufacture a controlled substance will be considered a controlled substance

_____

offenses was a controlled substance offense within the meaning of § 4B1.1 of the United States Sentencing Guidelines.

[2]The dissent suggests that this provision applies to Walterman's prior conduct because it includes violations of state laws prohibiting the manufacture of controlled substances. While we agree that state law prohibitions on the manufacture of controlled substances are included as controlled substance offenses, this is not Walterman's offense of conviction; he was convicted of a possessory offense–possession of a non-controlled substance with the intent to manufacture a controlled substance. Section 4B1.2(b) itself separates out possessory offenses, including those with intent to manufacture, from other controlled substance offenses, and we do not think it prudent to re-write the Guidelines in the way suggested by the dissent.

offense.[3] "Unlawfully possessing a listed chemical with intent to manufacture a controlled substance (21 U.S.C. § 841(d)(1)) is a 'controlled substance offense.'" USSG § 4B1.2, cmt. n.1. "Listed chemicals" are defined as any chemical specified as a list I or list II chemical, see 21 U.S.C. § 802(33), and lithium is neither a list I nor list II chemical, see 21 U.S.C. § 802 (34) & (35). Thus, while this portion of the application note considers unlawful possession of precursors such as ephedrine[4] as a controlled substance offense for purposes of the career offender enhancement, it does not apply to unlisted precursors such as lithium.

The government suggests that "the application note following [Guideline] § 4B1.2 provides examples, though by no means an exclusive list, of what types of offenses may constitute a controlled substance offense for purposes of the career offender guideline." (Gov't Br. at 7.) We disagree. The application note to Guideline § 4B1.2 clearly states that "[u]nlawfully possessing a listed chemical . . . is a 'controlled substance offense.'" USSG § 4B1.2, cmt. n.1. The commentary then references federal statutes which spell out what chemicals are "listed," and, by omission, those that are not. If the Sentencing Commission had meant this commentary to be exemplary, it could have simply advised that unlawfully possessing any precursor, including listed chemicals, is a controlled substance offense. It did not do so, and we decline the government's invitation to read any alleged ambiguity in its favor. See Simpson v. United States, 435 U.S. 6, 14-15 (1978) (holding rule of lenity does not permit enhancement of defendant's sentence under ambiguous criminal statute); cf. Crandon v. United States, 494 U.S. 152, 160 (1990) ("Because construction of a criminal statute must be guided by the need for fair warning, it is

---

[3]Sentencing guideline commentary is authoritative unless it violates the Constitution or is inconsistent with federal law. Stinson v. United States, 508 U.S. 36, 37-38 (1993).

[4]Ephedrine is a list I chemical. 21 U.S.C. § 802(34)(C).

rare that the legislative history or statutory policies will support a construction of a statute broader than that clearly warranted by the text.").

The government next relies on another sentence in the commentary: "Unlawfully possessing a prohibited flask or equipment with intent to manufacture a controlled substance (21 U.S.C. § 843(a)(6)) is a 'controlled substance offense.'" USSG § 4B1.2, cmt. n.1. As the argument goes, because this portion of the commentary refers to § 843(a)(6), and that statute prohibits possession of any chemical (listed or not) with intent to manufacture a controlled substance, the conviction for possession of lithium qualifies as a controlled substance offenses under this provision.

The problem with the government's reasoning is that it relies on commentary which fails to address precursor chemicals; rather, this provision is concerned only with possession of drug-making flasks or equipment. The commentary refers the reader to § 843(a)(6), which is a catch-all prohibition on the possession of flasks, equipment, machines, products, and chemicals for use in manufacturing controlled substances. If the Sentencing Commission sought to include all of these matters as qualifying controlled substance offenses, the related application note would not have limited itself by only mentioning flasks and equipment. Moreover, another section of the commentary deals with chemicals and includes only listed chemicals. Using the government's proposed interpretation, these two sections of the commentary would state that possession of listed chemicals with intent to manufacture is a controlled substance offense, and possession of *any* chemical with intent to manufacture is an controlled substance offense. In other words, the government supports an interpretation that would render part of the commentary superfluous. This obviously was not the intent of the Sentencing Commission. The sections are intended to be harmonious and complimentary, with one section addressing possession of listed precursor chemicals and another section addressing possession of flasks and other manufacturing equipment. The district court erred in finding that

Walterman's conviction for possession of lithium with intent to manufacture methamphetamine qualified as a controlled substance offense for purposes of the career offender enhancement. Accordingly, we reverse the district court on that issue and remand for resentencing without application of the career offender enhancement.

Walterman next argues that the district court erred when, according to him, it concluded that it did not possess the authority to grant a downward departure on the ground that his criminal history category significantly over-represented the seriousness of his criminal history. See USSG § 4A1.3. Absent an unconstitutional motive, we have no authority to review a district court's discretionary decision not to depart from a guideline sentencing range. United States v. VanHouten, 307 F.3d 693, 696 (8th Cir. 2002). As we have noted, an exception to this rule may exist where "the district court somehow believed that it lacked power to exercise [its] discretion to grant [the defendant] a downward departure." Id. Walterman argues the district court incorrectly believed that our decision in United States v. Butler, 296 F.3d 721 (8th Cir. 2002), cert. denied, 123 S.Ct. 1366 (2003), prohibited a departure under Guideline § 4A1.3. We do not think the record supports this claim.

In Butler, we held the district court abused its discretion in departing downward on the basis that the defendant's criminal history significantly over-represented the seriousness of his past criminal conduct. Id. at 725. Here, the district court refused to grant Walterman's motion for a downward departure in light of Walterman's lengthy criminal history. While the record shows that the district court might have had misgivings about the outcome, it does not support Walterman's argument that the district court believed it lacked authority to depart. On the contrary, the record suggests the district court was aware of its authority to depart, but found that Walterman's criminal history was "not sufficiently unusual" to justify a downward departure. (Sent. Tr. at 18.) We are without authority to review this discretionary ruling. VanHouten, 307 F.3d at 696; United States v. Mau, 958 F.2d 234, 237 (8th Cir. 1992).

For the reasons stated herein, we affirm in part, reverse in part, and remand for resentencing without application of the career offender enhancement.

BOWMAN, Circuit Judge, dissenting.

I respectfully dissent. The opinion of the Court mistakenly concludes that the District Court erred in finding that Walterman qualified for the career-offender enhancement pursuant to § 4B1.1 of the United States Sentencing Guidelines (U.S.S.G.) (2001). Because the District Court did not err in making this determination, I would affirm Walterman's sentence.

Walterman pleaded guilty to one count of conspiracy to manufacture five grams or more of methamphetamine. See 21 U.S.C. §§ 846, 841(a)(1) (2000). At his arraignment, the government notified Walterman of its intent to seek an enhancement of his sentence based on his two prior drug-felony convictions. Those two felony convictions arose from violations of Iowa Code § 124.401-4 (2001), which prohibits the possession of a precursor (including lithium) with intent to manufacture a controlled substance. According to the presentence report (PSR), Walterman was arrested on July 15, 1999, for possession of lithium with intent to manufacture methamphetamine. PSR ¶ 55. The following year, on March 24, 2000, Walterman was once again arrested for violating this same law for possessing a product containing ephedrine with the intent to manufacture methamphetamine. Id. ¶ 58; Brief for Appellant at 4–5.[5] Walterman was convicted of both these offenses. Based

_____

[5]The PSR states that this second state-law drug offense was for possession of lithium with intent to manufacture methamphetamine. PSR ¶ 58. But, in his brief and during oral argument before this Court, Walterman states that the charge was actually for possession of a product containing ephedrine with the intent to manufacture. Brief for Appellant at 5. Walterman only appeals the finding of the District Court that his conviction for possession of lithium with intent to manufacture methamphetamine (the 1999 charge) is a controlled-substance offense within the

-7-

on these two prior felony convictions, the District Court applied the career-offender enhancement pursuant to § 4B1.1 and increased Walterman's criminal history to category VI, and, with an offense level of 34, sentenced Walterman to 262 months of imprisonment.

Under § 4B1.1, Walterman is a career offender if (1) he was at least eighteen years of age at the time he committed the instant federal offense, (2) the instant federal offense is a felony that is a crime of violence or a controlled substance offense, and (3) he has at least two prior felony convictions of either a crime of violence or a controlled substance offense. Here, the Court concludes that Walterman's felony conviction in 1999 for possession of lithium with the intent to manufacture methamphetamine is not a "controlled substance offense" for purposes of § 4B1.1. Specifically, the Court argues that this felony conviction "does not fall under either category of controlled substance offenses defined in Guideline § 4B1.2(b)." Ante at 3. In my view, the Court misreads § 4B1.2(b).

Section 4B1.2(b) provides two ways for prior felony offenses to qualify for the career-offender enhancement under § 4B1.1:

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) *or*
>
> the possession of a controlled substance (or counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

§ 4B.1.2(b) (emphasis added).

---

meaning of § 4B1.1. He does not contest that his conviction in 2000 for possession of a product containing ephedrine with intent to manufacture was a controlled-substance offense within the meaning of § 4B1.1.

Walterman's conviction for possessing lithium with intent to manufacture fits squarely within the first part of § 4B1.2(b)'s definition of a controlled substance offense because it is "an offense under federal or *state law*, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture . . . of a controlled substance." U.S.S.G. § 4B1.2(b) (emphasis added). Walterman concedes that § 124.401-4 of the Iowa Code makes it a class "D" felony, punishable by a term of imprisonment exceeding one year, to possess lithium with the intent to use that chemical to manufacture any controlled substance. This Iowa statute fits the definition of a "controlled substance offense" because it prohibits the manufacture of a controlled substance—methamphetamine—by prohibiting the possession of its precursors with intent to manufacture methamphetamine. Contrary to the opinion of the Court, nowhere in the first part of § 4B1.2(b)'s definition of a controlled substance offense does it state that the defendant must actually possess "a controlled substance." Rather, that part of the provision only requires that the offense be a violation of "federal or state law . . . that prohibits the manufacture . . . of a controlled substance." The opinion of the Court conflates the second part of § 4B1.2(b)'s definition of a controlled substance offense, which may require that the defendant actually possess "a controlled substance," with the first part of § 4B1.2(b)'s definition, which has no such requirement. I have no doubt that Walterman's conviction for possession of lithium with intent to manufacture methamphetamine (stemming from his 1999 arrest) is a controlled-substance offense within the definition of § 4B.1.1.

According to the opinion of the Court, Walterman's 1999 conviction for possession of lithium with intent to manufacture methamphetamine was only a "possessory" offense and not a "manufacturing" offense. Ante at n.2. I fail to see the relevance of this distinction. First, there is no reason to conclude that because Walterman's 1999 offense was for *possession* of lithium with intent to manufacture methamphetamine that such a "possessory" offense cannot, by definition, also be a "manufacturing" offense. After all, Walterman was convicted for possession with intent to *manufacture* methamphetamine. Second, the opinion of the Court

compounds its error by again conflating the two parts of § 4B1.2(b) by reading into the first part of § 4B1.2(b) a requirement that Walterman actually possess "a controlled substance." As noted, the first part of § 4B1.2(b) only requires that Walterman manufacture a controlled substance. Walterman's 1999 conviction fits that requirement.

I also note the Government makes a compelling argument that application note 1 of § 4B1.2 further supports the propriety of the District Court's imposition of the career-offender enhancement. Specifically, the comment to note 1, which adds to the list of prior offenses that qualify for career-offender status and which states "[u]nlawfully possessing a prohibited flask or equipment with intent to manufacture a controlled substance (21 U.S.C. § 843(a)(6)) is a 'controlled substance offense,'" would seem to bring Walterman's state felony conviction for possession of lithium with intent to manufacture methamphetamine within § 4B1.2's ambit. See § 4B1.2, cmt. n.1. I agree with the Government that the reference in that application note to § 843(a)(6) is a shorthand reference, which incorporates all of the prohibitions in § 843(a)(6), including the possession of "any . . . *chemical*, product or material which may be used to manufacture a controlled substance." 21 U.S.C. § 843(a)(6) (emphasis added). Here, this comment justifies the District Court's imposition of the career-offender enhancement because Walterman possessed a chemical (lithium) with intent to manufacture a controlled substance (methamphetamine).

The Court contends that "[i]f the Sentencing Commission sought to include all of these matters as qualifying controlled substance offenses, the related commentary would not have limited itself by only mentioning flasks and equipment." Ante at 5. This argument is suspect for several reasons. First, the Court's view leads to the incongruous result that possession of flasks and equipment with intent to manufacture is a controlled substance offense, while possession of any other product, chemical or material with a similar intent would not be a controlled substance offense. Why would Congress want to punish possession of flasks or equipment

more harshly than other materials listed in 21 U.S.C. § 843(a)(6)? Second, application note 1 to § 4B1.2 enumerates examples, not an exclusive list, of crimes constituting controlled substance offenses. For example, one of the other comments in application note 1 to § 4B1.2 states that "[m]aintaining any place for the purpose of facilitating a drug offense (21 U.S.C. § 856) is a 'controlled substance offense.'" § 4B1.2 cmt. n.1. That comment references 21 U.S.C. § 856(a), which prohibits knowingly maintaining *or opening* any place for the purpose of manufacturing a controlled substance. See 21 U.S.C. § 856(a)(1). While that comment to § 4B1.2 does not mention, as the statute does, opening a place for purposes of manufacturing a controlled substance, it seems implausible that such conduct would not constitute a controlled substance offense. Again, I highly doubt that Congress or the Sentencing Commission intended only to punish the maintaining, not opening, of a place for purposes of manufacturing a controlled substance. Yet, the Court's interpretation of application note 1 would lead to this absurd result.

Accordingly, for the reasons stated, I dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.